DURHAM FERTILIZER CO., v. L. M. LITTLE & CO.

*Contracts—Trusts—Breach of Trust—Arrest and Bail— Fraudulent Conveyance—Intent—The Code, Secs.* 291 (2) (5), 3765 (6).

1. A contract of sale, containing provisions for the vendee's paying in cash for such of the property as he sells for cash, and turning over to the vendor the notes, &c., taken for such of the property as is sold on credit, constitutes the relation of trustor and trustee between the parties to it, as has been often decided by this Court.

2. One who fraudulently conveys property held by him as trustee can be legally arrested under *The Code*, Section 291.

3. One who fraudulently conveys his real estate with intent to defeat his creditors can be legally arrested under *The Code*, Section 291 (5).

4. The intent with which a trustee commits a breach of trust is immaterial. The misappropriation carries with it a fraudulent purpose and intent as a matter of law. The law turns a deaf ear to one who would excuse himself for an act which, *per se*, amounts to a breach of trust by saying that he did not mean to do wrong.

CIVIL ACTION, tried before *Timberlake, J.*, at August Term, 1895, of UNION Superior Court.

The affidavit upon which defendants were arrested is as follows:

James Hayes, being duly sworn, says:

"1. That he is the agent of Durham Fertilizer Company, a corporation created under the laws of the State of North Carolina, and doing business at Durham, North Carolina.

"2. That, on the 5th day of February, 1894, the defendants, L. M. Little & Co., composed of the defendants, L. M. Little and J. W. Hasty, entered into a contract with the plaintiff, (a copy of which is hereto attached as a part of this affidavit,) under and by virtue of which the plaintiff shipped to the defendants at Beaver Dam, N. C., seventy tons of fertilizers for the agreed price of thirteen hundred and fifty-five dollars and fifty cents, which said fertilizers were accepted by the defendants under the terms and upon the trusts mentioned in said contract, thereby becoming indebted to the plaintiff in the sum of $1,355.50, for which the defendants executed, on the 1st day of May, 1894, two notes, each for the sum of $677.75, and due respectively on the 1st and 15th days of November, 1895, and payable at the People's Bank of Monroe, N. C., as provided in said contract.

"3. That the defendants sold and delivered the said fertilizers to divers and sundry persons, (except about four

or five tons still in their possession, worth about seventy-five dollars,) and received therefor cash money, notes, liens and other evidences of indebtedness, some of which were made payable to the plaintiff and others to the defendants; and that defendants wrongfully and fraudulently have detained, misappropriated, misapplied and converted to their own use the cash received from the sale of said fertilizers, and have failed and refused to account for and turn over to the plaintiff the cash, notes, liens and other evidences of indebtedness of farmers or others for said fertilizers sold by them; that the defendants have wrongfully and fraudulently collected.and appropriated to their own use a much larger amount of cash on account of their sales than they have paid to the plaintiff, and refuse to pay over the amount collected to plaintiff; and on or about the 28th day of December, 1894, the said L. M. Little and J. W. Hasty made an assignment of their partnership goods, merchandise, accounts and evidences of debts due them to E. E. Marsh, one of their clerks, in which assignment plaintiff is not mentioned as a creditor, and have turned over to him and placed in his possession the debts due by purchasers of said fertilizers as well as those payable to L. M. Little & Co., as those payable to Durham Fertilizer Company, and refuse and fail to deliver the same to the plaintiff, although demand so to do has been made; that in all these transactions the defendants were acting in a fiduciary capacity as to the said fertilizers and cash and evidences of debt taken therefor.

"4. That on or about the 25th day of December, 1894, the defendant, L. M. Little, being the owner of real estate in Anson and Union counties, worth a large amount, viz., $4,000 or $5,000, executed a deed for the same to two or three different persons, who have lived with him in his immediate family, and over whom he exercises a large

influence, and some, if not all, of whom have been apprentices to him, in which said lands he reserved a homestead, for a consideration therein named, which affiant verily believes was not paid, with the intent to defraud the creditors of the said L. M. Little and L. M. Little & Co. Reference to said deeds as registered is hereby made as a part of this affidavit.

"5. That the defendants still owe a second note, given on May, 1894, for $677.75, and due 15th November, 1894; the first note for a like amount, due 1st November, 1894, having been paid about the 10th December, 1894.

"6. That the defendant, L. M. Little, took and fraudulently appropriated to his own use, of said fertilizers, in addition to those sold, several sacks thereof of the value of seventy-one dollars, and fraudulently refuses to account and pay for the same to the plaintiff.

"JAMES HAYES.

"Sworn to and subscribed before me, Jan. 2, 1895.

"F. H. WOLFE,
"*Clerk Superior Court.*"

The contract referred to in the foregoing affidavit is as follows:

"BEAVER DAM, February 5, 1894.

" *To Messrs. L. M. Little & Co., Beaver Dam, N. C.*

"We will furnish you with—

"Ten tons Durham Ammoniated Fertilizer at $22.50 per ton, f. o. b., Beaver Dam.

"Ten tons Farmers Alliance Official Fertilizer at $24.35 per ton, f. o. b., Beaver Dam.

"Ten tons all acid phosphate at $15.20 per ton, f. o. b., Beaver Dam.

"Ten tons D. B. Acid, at $14.25 per ton, f. o. b., Beaver Dam—

---

FERTILIZER COMPANY *v.* LITTLE.

"Or as much as may hereafter be mutually agreed upon at prices mentioned above. You hereby agree to order out this fertilizer by the 1st day of May, 1894; settlement to be made on or before May 1, 1894, in the following manner, viz.: In cash May 1st, for all cash sales; and your note, payable November 1st and 15th, 1894, for all time sales.

"For any time purchases you are to deposit with us the farmers' notes, liens and accounts, arising from the sale of the above-named goods, and the same shall be held as collateral security for the payment of the notes provided for in this contract, and the proceeds of such collaterals must first be applied to the payment of your notes, whether they shall have matured or not. It is also agreed that any fertilizer shipped you under this contract, is the property of this Company until your notes or accounts are fully paid. And it is further agreed that the notes, liens, and accounts arising from sale of said fertilizer is and shall be the property of said Durham Fertilizer Company until your notes or accounts with said Company are fully paid, whether said evidence of farmers' indebtedness for the said fertilizer shall have been sent to said Durham Fertilizer Company as collateral or is still in your hands. Collaterals will be returned to you in ample time for collection. In sending same to us, please ship by express or registered letter, placing a nominal value of $25 on the packages.

"It is also further understood that the Durham Fertilizer Company has the right to call notes to cover time payments at any time after shipment of the goods.

"For the Durham Fertilizer Company,

"L. A. CARR."

" [*Duplicate.*]

" We accept above contract.

                " L. M. LITTLE & Co.

" Signed in duplicate."

Defendant Hasty answers :

" 1. That he as managing partner of the firm of L. M. Little & Co., executed to the plaintiff two notes for fertilizers purchased by said firm from the plaintiff, one of which he paid ; but this defendant at this time does not recollect the exact amount of the unpaid note or the exact date at which it was executed, and he has no knowledge or information sufficient to form a belief that the alleged copy contained in paragraph 1 of complaint is a true copy of said note.

" 2. That on or about the 2d day of January, 1895, one Jas. Hayes, the alleged agent of the plaintiff, filed in this action his affidavit, sworn to before F. H. Wolfe, clerk of the superior court of Union county, wherein he made sundry averments of fraud against the defendants, L. M. Little and J. W. Hasty, partners composing the firm of L. M. Little & Co., and after filing an undertaking in the sum of one hundred dollars, moved, before said F. H. Wolfe, clerk as aforesaid, for an order of arrest against the defendants, L. M. Little and J. W. Hasty. That thereupon F. H. Wolfe, clerk of the superior court as aforesaid, issued to the sheriff of Union county, N. C., an order commanding him to forthwith arrest the said defendants and to hold them to bail in the sum of one thousand dollars each, to the effect that each of them shall at all times render himself amenable to the process of the court, &c.; that thereafter the defendants, L. M. Little and J. W. Hasty, were arrested by the sheriff of Union county by virtue of said order, and that each of them gave bail.

FERTILIZER COMPANY *v.* LITTLE.

in the sum of one thousand dollars, as required by said order, and are at this time under bond for the performance of said order.

" 3. That this defendant hereby denies, all and singular, the averments of fraud imputed to or charged against him in the affidavits of the said James Hayes; that they are wholly untrue, and that he has done no act which would justify or authorize his arrest in this action, or in his being held to bail in the sum of one thousand dollars, or any other sum.

" 4. That the amount of said bail is excessive and unjust, wholly unauthorized by the facts in the case, and entirely disproportionate to the amount of the undertaking fixed for the plaintiff in procuring the order, which is one hundred dollars."

Wherefore this defendant asks:

" 1. That the issues of fraud raised by the affidavits of said James Hayes, the agent of the plaintiff, and this denial be submitted to a jury, before any judgment is rendered in this action, and to be tried as all other actions are tried before a jury.

" 2. That the order of arrest heretofore issued in this action be set aside and the bail be discharged.

" 3. That if cause be found for the arrest of defendants, that said bail be reduced in amount."

The answer of the defendant Little was substantially the same as Hasty's.

The following issues were submitted by the court:

" I. Are the defendants indebted to plaintiff, as alleged in the complaint? 'Yes.'

" II. Have the defendants, or either of them, and if so which one, appropriated to their own use property held by them in trust for plaintiff, or held by them as agents for plaintiff, under the contract between the plaintiffs and

the defendants, and applicable to plaintiff's debt? ' Yes," as to Hasty ; ' No,' as to Little.

"III. Have the defendants, or either of them, and if so which one, assigned or disposed of their property with intent by such assignment or disposal to defraud his creditor? ' No,' as to Hasty ; ' Yes,' as to Little."

The defendants tendered this issue, which the court refused to submit, and the defendants excepted :

" Have the defendants, or either of them, and if so which one, appropriated to their own use property held by them in trust for plaintiff, or held by them as agents for plaintiff, under the contract between the plaintiff and the defendants, *with intent by such appropriation to hinder, delay and defraud their creditors ?* "·

At the conclusion of the evidence in the case, counsel for the defendants submitted to his Honor a written prayer for instructions, of which the following is a copy, viz :

" 1. A debtor unable to pay his indebtedness in full, has a right to prefer creditors if he makes no reservation for his own benefit to the injury of creditors unprovided for ; and reservation by a debtor of a homestead, which creditors could not sell, is not such a benefit reserved as can be said to be to the injury of creditors.

" 2. That the deed of assignment from L. M. Little & Co. to E. E. Marsh, the record of which was introduced by the plaintiff, does not, upon its face, convey any accounts, notes, goods or other property belonging to the plaintiffs and held in trust by defendants for the plaintiff.

" 3. Fraudulent intent is a question of fact for the jury and not for the court, and is never presumable when fairly reconcilable with honesty ; and the relation of master and servant is not such a one as will raise a presumption of fraud in a conveyance from master to servant, the

master being insolvent; but, the conveyance being fair and square upon its face, the intent must be proved *aliunde*."

The court refused to give these instructions and defendants excepted.

Upon the pleadings and evidence the court directed a verdict for plaintiffs and rendered the following judgment:

"The jury having found the issues in favor of plaintiff, viz: That the defendants are indebted to the plaintiff as alleged in the complaint; that the defendant, J. W. Hasty, has appropriated to his own use property held by him in trust for the plaintiff, and held by them as agents of the plaintiff, under a contract between the plaintiff and the defendants and applicable to plaintiff's debt; and that the defendant, L. M. Little, has assigned and disposed of his property with intent by said assignment or disposal to defraud his creditors—

"It is, on motion of A. Burwell and H. B. Adams, attorneys for the plaintiff, adjudged: That the plaintiff do recover from the defendants, J. W. Hasty and L. M. Little, individually and as partners, the sum of seven hundred and eight dollars and seventy cents ($708.70,) with interest on six hundred and seventy-seven dollars and seventy-five cents from the 19th day of August, 1895, till paid, and the costs of this action to be taxed by the clerk; and it is further adjudged that the motion of the defendants to set aside the order of arrest, heretofore issued and served on the defendants in this action, be disallowed.

"It is further adjudged that execution issue against the property of the defendants for the payment of said judgment, and if property sufficient to satisfy said judgment

cannot be found, that execution issue against the person of said defendants, according to law."

The evidence was quite voluminous, but it is unnecessary to set it out.   Defendants appealed.

*Messrs. Burwell, Walker & Cansler,* for plaintiff.

*Mr. F. I. Osborne* and *Messrs. Battle & Mordecai,* for defendants (appellants).

MONTGOMERY, J.:   This action was commenced by the plaintiffs against the defendants as partners to recover the amount due on a promissory note.   No denial of the debt was made, and a judgment for the indebtedness claimed was entered up in favor of the plaintiffs against the defendants without objection.   The appeals by both defendants in the case are not from the judgment declaring the debt, but from the order made in reference to the ancillary remedy of arrest and bail which the plaintiffs had availed themselves of to better secure the fruits of their recovery.   The order of arrest was issued upon affidavit made by the plaintiffs' agent under Subsection 2 of Section 291 of *The Code,* and it would seem under Subsection 5 also.   This Court has declared in repeated decisions that the vendees in contracts of sale which contained provisions similar to the ones executed between the parties to this suit occupy a fiduciary relation, a relation of trust and confidence, to the vendors in respect to the property in the possession of the vendees for the benefit of the vendors, and that such agent and trustees are subject to arrest if they commit a breach of the trust by converting to their own use the property so held by them.   *Travers* v. *Deaton,* 107 N. C., 500 ; *Boykin* v. *Maddrey,* 114 N. C., 89 ; *Guano Co.* v. *Bryan,* at this Term.   Upon the trial of the issue of fraud the jury found that the defendant Little had assigned and disposed of his property with intent by such

118—52

assignment to defraud his creditors. Upon this finding, his Honor continued the order of arrest from which Little appealed; and we will first take up and dispose of his appeal.

The affidavit of the plaintiff charges Little with conveying his real estate of considerable value to some persons who had formerly been his apprentices, with intent to defraud his creditors, individual and partnership. There was no allegation that he had removed or disposed of his personal property with intent to defraud his creditors, nor was there fraud alleged in the contraction of the debt. The testimony tended to prove that the defendant had made fraudulent conveyances of his real estate, and his Honor instructed the jury to find the issue of fraud against him if they believed all the testimony. There was no error in the instruction of the court. The conveyance of real estate by a debtor to defraud his creditors does subject him to arrest. Subsection 5 of Section 291 of *The Code* applies to real as well as personal property. *Code*, Sec. 3765 (6). We are not inadvertent to the case of *Bridgers* v. *Taylor*, 102 N. C., 86. But the decision there, made before Subsection 2 of Section 291 of *The Code* was amended, was upon the meaning of the words "taking, detaining and converting property," the Court deciding that they embraced personal property only. The words "removed or disposed of," used in Subsection 5 of the same Section, are words different and of broader meaning from those used in Subsection 2, and are broad enough to comprehend real estate.

The affidavit upon which the order of arrest was issued contained allegations of fraudulent misappropriation by both of the defendants of the goods and money and notes of the plaintiff which the defendants had in their possession. The law presumes that Little had knowledge of the con-

tract, and, as a consequence, of the fiduciary relation which it created between both of the defendants and the plaintiff as to the property the defendants had in their hands for the plaintiff's benefit, although Little did not sign it or know of its execution.   If he had known or connived at the misappropriation of the property, which the jury found Hasty had been guilty of, such knowledge or connivance would have made Hasty's act his act as well, although in fact he did not execute the contract with Hasty.   Of course, if Little had had knowledge at the time he executed with Hasty the assignment to Marsh that the latter was to receive the property which belonged to the plaintiff, and to apply it to other creditors than the plaintiffs, he subjected himself to arrest for the fraud.   On the trial the defendant testified :   " I am a farmer, was lately engaged in business at Beaver Dam under the style of L. M. Little & Co.; live four miles from there ; was a partner but had nothing to do with its management; Hasty was managing partner ; I did not sign contract or know anything about it till I was arrested ; knew nothing of the condition of the concern ; thought it was in good condition ; the understanding was that it should be run on a cash basis ; knew nothing of its bad condition until I returned from Statesville about December, 1894 ; knew nothing of books, nor made entries, nor examined books ; bought no goods, made no orders, was not present at taking of stock ; knew they were selling guano but did not know what disposition was made ; I handled none of the proceeds of it ; the firm made an assignment ; Hasty and I signed the assignment ; at the date of this I had no knowledge of debts held in trust by the firm, nor of guano held in trust by the firm ; I bought guano as any other customer ; I ginned cotton for the firm sufficient to pay for the guano ; don't recollect having a conversation with Hayes ; don't think I ever saw Hayes

before yesterday." There was no testimony introduced contradictory or inconsistent with that of the defendant.

Defendant Hasty's appeal: The order of arrest, so far as the defendant Hasty is concerned, ought to have been continued for the reason that his counter-affidavit, purporting to meet the facts alleged against him in the affidavit of the plaintiff's agent upon which the order of arrest was issued, did not contain a denial of the facts and charges set out against him in the plaintiff's affidavit. Section 3 of defendants' affidavit and answer is a confession that the facts stated in the affidavit of the plaintiff's agent were true. The defendants' denial, such as it was, was simply a legal construction by himself of the meaning and effect of the acts charged against him. The facts alleged in the affidavit of the plaintiffs' agent were sufficient, if true, to warrant the issuing and continuation of the order of arrest, and the construction as to the legal effect of these acts and charges put upon them by the defendant was an erroneous one. *Guano Co.* v. *Bryan*, at this Term. However, no motion was made by the plaintiff to dismiss the motion of the defendant to set aside the order of arrest, and the parties went to a trial of the issue of fraud. The plaintiff tendered the following issues (with others not necessary in this connection to mention): "Have the defendants or either of them, and if so which one, appropriated to their own use property held by them in trust for the plaintiff, or held by them as agents for the plaintiff, under the contract between the plaintiffs and the defendants, and applicable to the plaintiffs' debts?" The defendants tendered an issue in the same language as the one offered by the plaintiff, except with the words "with intent by such appropriation to hinder, delay and defraud their creditors" substituted for the words in plaintiffs' issue "and applicable to the plaintiffs' debts." The issue

tendered by the defendants was rejected and the one tendered by the plaintiff accepted.   The defendants excepted. The jury rendered their verdict in favor of the plaintiff, and thereupon his Honor continued in force the order of arrest, and the defendant appealed.

His Honor committed no error in submitting the issue tendered by the plaintiff and in rejecting the one tendered by the defendants.   In *Boykin* v. *Maddrey, supra,* it is held that the intent with which the trustee or agent commits a breach of trust is immaterial to be proved.   A misappropriation carries with it a fraudulent purpose and intent as a matter of law.   The learned judge who delivered the opinion of the Court in that case said : " The law gives to a plaintiff, whose money or property has been put beyond his reach by his agent or trustee by an act in violation of his duty, the remedy of arrest and bail that he may the better compel his unfaithful agent or trustee to make amends for his unfaithfulness, and it ' turns a deaf ear " to one who would excuse himself by asserting that he did not mean to do wrong when consciously doing that which was a breach of the trust reposed in him_____ Good intentions do not at all lessen the wrongfulness of a breach of trust, or, rather, the law will not allow one to say that he violated its plain precepts with good intentions." The defendant did not introduce a particle of evidence calculated to show any cause or reason for the vacating the order of arrest.   The testimony of the plaintiff, none of which was objected to by the defendant, Hasty, all tended to show that he had committed a breach of the trust reposed in him by the plaintiff by wrongfully misappropriating and converting to his own use, as their agent and trustee, the plaintiff's property.   The defendants asked the court to instruct the jury that the deed of assignment from the defendants to Marsh did not upon its face convey

the property of the plaintiff held in trust by the defendants for the plaintiff. His Honor refused to give the instruction and the defendants excepted. There was no error in the ruling of the court. Whether or not the deed of trust conveyed the property of the plaintiff upon its face, as a matter of law, is immaterial so far as the investigation before the court was concerned. As a matter of fact, undisputed, the defendant, Hasty, actually turned over to Marsh the notes and guano which belonged to the plaintiff. There was no error in his Honor's continuing and keeping in force the order of arrest as to both defendants.

No Error.

AVERY, J. : I dissent from so much of the opinion as holds the defendant, Little, to be liable to arrest. *Bridgers v. Taylor*, 102 N. C., 86.