## SOUTHERN GROCERY CO. v. DAVIS.

### (Filed March 10, 1903.)

1. ARREST AND BAIL—*Evidence—Agency—Consignment—The Code, Sec. 291, Sub-sec. 2.*

   In an action to recover a balance due on consigned goods, with ancillary proceedings in arrest and bail, it is competent for the defendant to show that he had not embezzled any of the goods and that the shortage was due to theft, failure to collect and the sale of some of the goods at an underprice to induce the sale of others.

2. ARREST AND BAIL—*Agency—The Code, Sec. 291, Sub-sec. 2.—Ancillary Proceedings.*

   A consignee of goods cannot be held in arrest and bail for failure to collect for goods sold on credit and payment therefor if there is no stipulation in the contract against selling on credit.

3. ARREST AND BAIL—*Agency—Ancillary Proceedings.*

   Where, in an action against a consignee of goods, with ancillary proceedings in arrest and bail, the jury finds that the shortage was not due to misappropriation, the order of arrest should be vacated and a civil judgment given for the shortage.

ACTION by the Southern Grocery Company against J. P. Davis, heard by Judge *O. H. Allen* and a jury, at December (Special) Term, 1902, of the Superior Court of FRANKLIN County. From a judgment vacating the arrest and bail, the plaintiff appealed.

*W. B. Shaw* and *W. M. Person,* for the plaintiff.
*F. S. Spruill,* for the defendant.

CLARK, C. J. This was an action begun before a justice of the peace to recover $56.73 with interest, alleged to be balance due plaintiff for goods consigned to defendant, with ancillary proceedings in arrest and bail. The defendant agreed to sell goods to be consigned to him from time to time by plaintiff, title to the same to remain in the plaintiff, and turn over to it the proceeds at the invoice price, and on a settlement return to the plaintiff all such goods as remained

on hand unsold. There was no stipulation shown as to the price at which the defendant should sell. It was in evidence that the defendant received goods to the invoice price of $254.28 and that he returned $57.44 in goods to the plaintiff and turned over to it $140.11 as the proceeds of sale, leaving 56.73 unaccounted for. In reply to questions objected to, the defendant stated (1) that he had not appropriated any of the goods or proceeds of sale to his own use; (2) that he sold on credit $29.75 worth to three parties named (among them his father and brother) for which he was not paid, and that some goods were stolen, and (3) that he could not say what became of some of the goods, that he was compelled to sell meat at reduced prices to compete with others, that he had $100 of his own when he began and lost money in carrying on the business, but that he turned over all the money he received for the goods and all goods that were unsold.

The first three exceptions were to the admission of the above evidence. The arrest and bail was granted under the provisions of The Code, Sec. 291 (2) "for money received or for property embezzled or fraudulently misapplied" by an "agent, broker or other person in a fiduciary capacity," and it was clearly competent for the defendant to state the above facts in his own exoneration. It was most pertinent evidence upon the second issue whether the defendant had appropriated to his own use the property or its proceeds, which had been entrusted to him by the plaintiff. If the goods or proceeds had been appropriated by the defendant to his own use, his *intent* in so doing would be immaterial, but it was competent to show that he had not so appropriated anything, and that the shortage was due to theft, failure to collect, and sale of some articles at an underprice to induce the sale of others.

The fourth exception is to the following paragraph in the

charge: "If nothing was said in the contract about crediting goods out, the defendant would have some discretion in that respect, but that discretion should be exercised with reference to the interest of the consignor in a reasonable business-like manner." There being no stipulation against selling on credit, if the defendant sold in good faith on credit and failed to collect, the most that the plaintiff could exact was civil liability for the invoice price, but he cannot hold the defendant in arrest and bail for unfortunate sales, or failure to collect, when there is evidence, which the jury believed, that the deficiency of $56.73 was not due to any misappropriation or embezzlement by the defendant, but to his failure to collect for goods sold on credit, and the other causes stated in his evidence. The agreement to account for goods at invoice prices was not a stipulation that none should be sold at less, but a provision that all proceeds above the total of invoices should be the seller's commission or profit. The contract is much in the nature of a *Del Credere* agency in which the agent guarantees payment, and the title to goods remains in the vendor, and that usually contemplates sales on credit. See 9 Am. & Eng. Enc. (2 Ed.) 182, 183.

The defendant does not seem to have been specially adapted for a successful mercantile career, but the jury having found that he had not appropriated any of the property entrusted to him to his own use, the court properly vacated the order of arrest and entered a civil judgment for the recovery of $56.73 which by consent the jury found was the amount to which the defendant was indebted to the plaintiff.

In the cases relied on by the plaintiff, *Travers v. Deaton,* 107 N. C., 500; *Boykin v. Maddrey,* 114 N. C., 89; *Fertilizer Co. v. Little,* 118 N. C., 808, and *Gossler v. Wood,* 120 N. C., 69, the fact of misappropriation by the defendant of the plaintiff's goods was admitted. In *Guano Co. v. Bryan,* 118 N. C., 578, the answer shows that the denial of misap-

propriation is not based upon the defendant's not appropriating the goods to his own use, but upon the legal construction he put upon the contract.    Here the appropriation of any of the property is explicitly negatived by the defendant's testimony, and the jury found his statement to be true.

No error.